UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STERLING CROSS DEFENSE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOLARIAN CAPITAL, INC.; and ARA G. DOLARIAN, <br><br> Defendants. | Case No. 1:13-cv-01773 AWI EPG <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT IN PART <br><br> ORDER REQUIRING SUPPLEMENTAL BRIEFING ON PUNITIVE DAMAGES AMOUNT <br><br> ORDER VACATING HEARING DATE <br><br> (Doc. 44) |

## I. INTRODUCTION

On October 16, 2015, Plaintiff Sterling Cross Defense Systems, Inc. ("Plaintiff" or "Sterling Cross") filed a Request for Entry of Default Judgment against Defendants Dolarian Capital and Ara G. Dolarian ("Defendants"). Doc. 44. The Court set this matter for hearing on November 30, 2015 and served that Order on Defendants at their last known address. *See* Doc. 46. Local Rule 230(c) requires that any opposition must be filed not less than fourteen days preceding the notice hearing date. Fewer than fourteen days remain before the hearing date, but Defendants have not filed any response or otherwise appeared in this lawsuit since August of 2014. The Court deems the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacates the hearing scheduled for November 30, 2015. On November 18, 2015, Plaintiff filed an additional, more detailed motion requesting entry of default judgment. Doc. 47. This Court considers that motion as well. For the following reasons, Plaintiff's Motion for Default Judgment will be granted in part.

## II. BACKGROUND

According to the complaint, Plaintiff contracted with Dyncorp International LLC ("Dyncorp") to deliver various military assets for use by the United States Department of Defense. Doc. 15, First Amended Complaint ("FAC") at ¶ 8. Plaintiff alleges that Defendants assured Plaintiff that they were in a position to acquire the assets for Plaintiff and deliver them on time. FAC. at ¶ 9. Plaintiff and Defendants entered into a contract under which Defendants would deliver the military assets on time to a destination specified by Plaintiff. FAC at ¶ 10. Under that contract Plaintiff was required to pay Defendant $300,000.00 and actually did so. FAC at ¶ 35. Plaintiff contends that Defendants knew at the time of contracting that they could not deliver on that promise. In fact, Plaintiff alleges that Defendant made multiple misrepresentations regarding their positions and ability to perform prior to contracting and continued to do so after contracting in an attempt to mislead Plaintiff into believing that Defendants intended to perform.

First, Mr. Dolarian indicated that he had the assets in his warehouse in Bulgaria necessary to fill the Sterling Cross contract with Dyncorp. FAC at ¶ 20. Plaintiff alleges that Defendants never possessed the specific military assets and Defendants knew that they did not possess them. FAC at ¶¶ 21-22.

Second, Mr. Dolarian indicated that he was a partial owner of a Bulgarian government-owned export company and was in a position to facilitate issuance of an export permit necessary to move military assets from Bulgaria to Ramstein Air Base in Germany. FAC at ¶¶ 8, 23. Plaintiff contends that Defendants did not have any of the connections or contacts that they purported to have. FAC at ¶ 24. Instead, Defendants were actually under investigation for corruption and falsifying documents. FAC at ¶ 24. As a result, the third party necessary to secure the export permit refused to do business with Defendants. FAC at ¶ 30. In an effort to disguise the reason for Defendants inability to secure an export permit, Defendant Ara Dolarian informed Plaintiff that the permit could not be issued to due to a fault with the end user certificate ("EUC") provided by Plaintiff. FAC at ¶ 29. The representation regarding the invalidity of the EUC was false; the certificate was valid. FAC at ¶ 30.

Third, Mr. Dolarian repeatedly informed Plaintiff that the military assets had been purchased and were ready to ship upon obtaining the requisite export permit. FAC at ¶ 32. In fact, no money had been paid to vendors and no military assets were ready to ship. FAC at ¶ 33.

Plaintiff eventually determined that Defendants could not deliver and had never intended to deliver the military assets at issue in the contract. Plaintiff demanded return of the $300,000.00 payment to Defendants. FAC at ¶ 27. Defendant Ara Dolarian refused. FAC at ¶ 27. From September 2013 to December 2013, Plaintiff was forced to "expend huge amounts of time and energy and expend large amounts of money in travel expenses to obtain the assets not provide by Defendants." FAC at ¶ 37. Plaintiff alleges that it accrued "$50,000.00, or more," in incidental damages in covering Defendants' failure to deliver the contracted military assets. FAC at ¶ 37. Plaintiff further alleges that the "cash, time[,] and energy [that] was taken from other of Plaintiff's projects …" because of Defendants' conduct has resulted in damages in the sum of "$1,000,000.00, or more." FAC at ¶ 38. Next, Plaintiff alleges that as a result of Defendants' conduct, it has lost its "preferred supplier status and … several other contracts," injuring Plaintiff in the amount of "$1,000,000.00, or more." FAC at ¶ 39. Finally, Plaintiff seeks punitive and exemplary damages in an unspecified amount. FAC at ¶ 41.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. FED. R. CIV. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, Moore's Federal Practice § 55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted)).

A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977) (stating that although a default established liability, it did not establish the extent of the damages). If a plaintiff proves entitlement to default but does not prove the full extent of damages due, the court can enter partial default judgment. *See Dreith v. Nu Image, Inc.,* 648 F.3d 779, 781 (9th Cir.2011) (mentioning in approval that "... the district court entered default judgment against [the defendant] with respect only to liability, but deferred ruling on damages pending further briefing and evidentiary submissions."); *Sprint Nextel Corp v. Welch*, 2014 WL 68957, *2 (E.D. Cal. Jan. 8, 2014) *adopted by* 2014 WL 2106683 (E.D. Cal. May 20, 2014).

## IV. DISCUSSION

**A.      Service of Process and Jurisdiction**

Service of process against Defendants was adequate. Defendants not an infant, incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  Defendants were properly served with the complaint and summons and actually appeared in this matter. Defendants and former counsel Myron Smith were all personally served, by the United States Marshal Service, with the Order to Show Cause issued on May 29, 2015. Doc. 37. That order informed Defendants that default was a possible consequence of failure to respond or appear. Doc. 36. Defendants failed to appear, and on August 17, 2015, the clerk entered default against them. (Doc. 6).

4

The allegations in the complaint are sufficient to establish subject matter jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff is a citizen of a foreign state and Defendants are citizens of a state of the United States: Plaintiff is a corporation, incorporated in and with its principal place of business in British Columbia.  Defendant Ara Dolarian resides – according to the information last provided to this Court – in the State of California, County of Fresno. Defendant Dolarian Capital is a corporation with its principal place of business in Fresno, California.  The amount in controversy exceeds $75,000 exclusive of interest and costs.

**B.    The Eitel Factors**

Having considered the *Eitel* factors as discussed below, the Court finds that partial default judgment is appropriate as to Plaintiff's claims and that Plaintiff has proven entitlement to a specific liquidated damages amount. Plaintiff has also proven that punitive damages are due but has failed to provide evidence from which the Court can determine a specific punitive damages amount.

**1.    Possibility of Prejudice to Plaintiff**

*Eitel* requires that the Court consider whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177.  Here, Plaintiff would face prejudice if the Court did not enter a default judgment.  Absent entry of a default judgment, Plaintiff would be without recourse for recovery given defendant's failure to participate in this litigation in over a year. Accordingly, the first *Eitel* factor favors the entry of default judgment.

**2.    Substantive Merits and the Sufficiency of the Complaint**

The Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries.  As seen below, the Court finds that Plaintiff's claims have been sufficiently plead and have substantive merit.  These two factors thus weigh in favor of granting Plaintiff's motion. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175.

///

///

///

### i. Breach of Contract

Plaintiff's first claim is for breach of contract.[1] The elements of breach of contract under California law are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen'l Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Plaintiff has pled that a contract existed between the parties, provided the specific details of the contract, and submitted a copy of the contract. *See* Docs. 1 and 15. Plaintiff has alleged that it provided a $300,000.00 deposit to Defendants and that it was prepared to pay the remainder upon delivery of the assets, as provided by the contract. Plaintiff has further alleged that Defendants failed to deliver the assets or return the $300,000.00 deposit. As a result, Plaintiff was unable to deliver the assets on time, was forced to cover, and has also lost preferred supplier status. Plaintiff has adequately stated a breach of contract claim.

### ii. Fraud

Fraud entails (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or *scienter*); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).

Plaintiff alleges that Defendants indicated that they possessed the military assets and could obtain export permits within the time provided by the contract because of Defendants' connections with the Bulgarian government. Plaintiff alleges that Defendants knew at the time of contracting that they did not possess and could not deliver the assets promised and that they could not obtain the requisite export permit. Defendant made those representations in an effort to defraud Plaintiff into making a substantial down payment that, to date, has not been returned. Based on Defendants' representations regarding the actual possession of the assets in question and Defendants'' apparent ability to deliver them, Plaintiff was justified in relying on those representations. In fact, Plaintiff did so repeatedly – first when it paid the down payment and again when Defendants attempted to hide their inability to deliver the assets and Plaintiff delayed in cover. Plaintiff has adequately stated a claim for fraud.

These factors weigh in favor of entry of default judgment.

---

[1] The contract at issue provides that it is to be interpreted in accordance with California law. *See* Doc. 1 at 10.

6

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Where a large sum of money is involved, entry of default judgment is disfavored. *Chanel, Inc. v. Gupton*, 2015 WL 1094849 (N.D. Cal. Mar. 2, 2015) (citing, *inter alia*, *Eitel*, 782 F.2d at 1472).

Here, Plaintiff has provided the Court with multiple total damages amounts. Initially Plaintiff indicates that $1,017,795.03 is due, inclusive of damages and costs. Doc. 44-1 at ¶ 2. However, later in Counsel's declaration, he arrived at the total figure of $717,272.83 as the amount owing in damages; approximately $300,000 less than Plaintiff's initial representation of the amount due. Doc. 44-1 at ¶ 12. Neither of those figures is consistent with Plaintiff's calculation in the first declaration of Counsel Jeff Reich. Doc. 44-1. The calculation included the amount that Plaintiff: (1) paid as a deposit ($300,000.00), (2) seeks in interest at 10% per annum ($68,383.08), (3) incurred in incidental damages in attempting to cover Defendants' breach ($48,889.75), and (4) requests in punitive damages ($600,000.00), for a total sum of $973,272.83, not including costs. The only figure presented for costs is $522.20 for a filing fee and service costs. Plaintiff provided no documentation in support of any of those figures.

In Plaintiff's second request for entry of default judgment, Plaintiff provides yet another figure: $1,013,666.83. Doc. 47-1. That figure was arrive at by totaling (1) the amount paid as a deposit ($294,340.00), (2) the interest on that deposit at 10% per annum for 867 days ($69,914.88), (3) the incidental damages incurred attempting to cover ($48,889.75), (4) the punitive damages sought ($600,000.00), and (5) the costs involved in filing and service of process ($522.20). Plaintiff has presented documentation to support this figure (other than the punitive damages).

The sum of money at stake is significant and largely based on punitive damages, but is supported by documentation including a declaration of Counsel; a declaration of the CEO of Sterling Cross, detailing the expenses; proof of transfer of the down payment. The final figure – $1,013,666.83 – is likely reasonable in relation to Defendants' fraudulent conduct and the scope of the injury caused. Certainly, in considering the proved amount alone – $413,666.83 – the sum of

7

money at stake is reasonable in light of Defendant's conduct. Consequently, the factor weighs in favor of entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case no longer appear to be in dispute. Although now stricken, Defendants filed an answer generally denying the allegations regarding the alleged breach of contract and misrepresentations. Defendants maintain that the failure to deliver the assets was a result of Plaintiff's failure to provide the EUC required to secure an export permit that would allow the assets to be transported from Bulgaria to the Air Station in Germany. However, Defendant provided no facts to support that position and has been absent from the proceedings for over a year. As a result, the Court may assume the truth of well-plead facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendant's failure to file an amended answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). The more likely scenario is that Defendants' general, fact-barren, now-stricken Answer was filed in an effort to delay entry of judgment rather than to dispute of the facts at issue. This factor weighs in favor of entry of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

Upon review of the record before the Court, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiff served Defendants with the summons and complaint and the Marshal Service personally served the notice of order to show cause hearing, informing Defendants that default was a possible consequence. Moreover, this Court provided notice of Plaintiff's request for entry of default judgment and set a hearing on the matter. Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendants have not appeared in this action for over a year. Additionally, Plaintiff notes that Defendant Ara Dolarian elected not to participate in discovery or appear at the time and place noticed for his

deposition, tending to indicate that he does not intend to participate in this action. Doc. 44-1 at ¶ 9. Thus, the record suggests that Defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the Court is cognizant of the policy favoring decisions on the merits—that policy is unavailable here because Defendants have not defended against this action. This factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff has established liability on both counts, based on the allegations of its complaint, as required for entry of default judgment against Defendants. However, in order for judgment to be entered, Plaintiff is also required to prove the amount of the damages and costs.

### C. **Damages**

A party's default conclusively establishes that party's liability, however it does not establish the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (*per curiam*). A plaintiff must prove entitlement to the figure sought on default. *See Calix, Inc. v. Alfa Consult, S.A.*, 2015 WL 3902918, *5-6 (N.D. Cal. June 24, 2015) (determining that the plaintiff was entitled to the default judgment sum requested only after reviewing thorough declarations by plaintiff's counsel and the plaintiff corporation, and examining exhibits, including invoices showing that money was actually paid); *Datatel Solutions, Inc. v. Keane Telecom Consulting, LLC*, 2015 WL 411238 *9-10 (E.D. Cal. Jan. 30, 2015) (denying entry of default judgment where the plaintiff in a breach of contract claim submitted a copy of the contract and a detailed declaration regarding the damages but no supporting evidence). Therefore, the Court must consider the question of damages separately. As earlier noted,

Plaintiff has asserted damages and costs in four[2] different total amounts: $1,017,795.03, $973,272.83, $717,272.83, and most recently $1,013,666.83. The last figure is partially documented. Proof has been submitted to establish that the liquidated portion of the most recent figure is correct. Specifically, this Court agrees that at least $413,666.83 (the total sum of damages claimed less the punitive damages amount) is due. Partial summary judgment will be entered in that amount.

Plaintiff's entitlement to the full sum of punitive damages sought is less clear. In order to obtain punitive damages under California law, a plaintiff must show by clear and convincing evidence that a defendant acted with malice, fraud, or oppression. See Cal. Civ.Code § 3294; *Roby v. McKesson Corp.*, 47 Cal.4th 686, 712, (2009). In order to determine whether punitive damages should be awarded, and the amount to be awarded the Court considers: (1) the nature of defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant. *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir.1984) ("*Sino*"). "In determining whether punitive damages are appropriate, the Court 'cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition.'" *Brantley v. Boyd*, 2013 WL 3766911, *9 (N.D. Cal. 2013) (finding that the record did not sufficiently establish defendant's wealth, and declining to award punitive damages without knowing the proportionality of an award) (citation omitted). Within that framework, District Courts have discretion in determining an appropriate punitive damages award on default judgment. *Develder v. Hirshler* 2014 WL 2858801, *2-3 (E.D. Cal. June 23, 2014) (citing Fed. R. Civ. P. 55(b)(1)); *see Sino*, 727 F.2d. at 1473. That discretion is retrained by the constitutional limitation that a punitive damages award should not exceed four times the compensatory damages award. *See State Farm v. Campbell*, 538 U.S. 408, 425-426 (2003).

As to the first consideration, it was established above that Defendant's conduct was fraudulent. As to the second consideration, the Court has determined that $294,340.00 in compensatory damages should be awarded. As to Defendant's wealth, there is limited information in the record. Plaintiff contends that "Defendants have attempted to conceal their assets from

---

[2] If the Court considers the amount pled in Plaintiff's operative complaint – approximately $2.4 million – then Plaintiff has actually alleged five different figures for damages. *See* Doc. 15.

execution." Doc. 44-1 at ¶ 6. For instance, Defendant Ara Dolarian appears to have purchased a residence in Fresno California for $1,225,000.00 on November 30, 2010. Doc. 44-1 at ¶ 6. Plaintiff alleges that the home was taken in the name of Martel 3d, LLC, an entity whose agent for service of process is Defendant's wife. Based on those representations, Plaintiff claims that "Defendants have substantial assets and should be liable for punitive damages." Other than Plaintiff's allegations, the basis for which is unclear, the Court has been provided no information to determine Defendant's wealth. Without that information, the Court cannot determine whether the proposed punitive damages amount is sufficient to deter further misconduct, on one hand, or excessive, on the other. Plaintiff will be granted an opportunity to provide evidence to substantiate its claim that Defendants "have substantial assets."

Plaintiff has failed to make an adequate showing for the Court to be able to determine an appropriate figure for a punitive damages award. As a result, this Court can only enter partial default judgment as to the liquidated amount and find that punitive liability. *See Sprint Nextel Corp v. Welch*, 2014 WL 68957, at *2. The specific punitive damages amount is left open.

### **V. ORDER**

Based on foregoing, IT IS HEREBY ORDERED that:

1. Partial default judgment is ENTERED in the amount of $413,666.83 for liquidated damages as provided herein;
2. Defendant is ADJUDGED liable for punitive damages;
3. Plaintiff SHALL:
   a. File and serve supplemental briefing, not to exceed five (5) pages, as to the punitive damages amount and submit evidence in support thereof within thirty (30) days of the date of this Order; or
   b. File and serve notice within thirty (30) days of the date of this Order that it does not intend to seek punitive damages against Defendants. Failure to submit additional evidence to support a punitive damages award will result in entry of punitive damages in an amount determined by the Court based on the information already present in the record.

4.  The hearing set on this matter for November 30, 2015 is VACATED.

The Clerk of the Court is respectfully directed to serve a copy of this Order on Ara Dolarian at 1284 W. Shaw Ave. #102, Fresno, CA 93711.

IT IS SO ORDERED.

Dated:  November 20, 2015

SENIOR DISTRICT JUDGE